No. 49,297

THOMAS COUNTY TAXPAYERS ASSOCIATION, *et al., Appellants,* v. JOAN
FINNEY, TREASURER OF THE STATE OF KANSAS, *et al., Appellees.*

(573 P.2d 1073)

Opinion
filed January 21, 1978.

*Kenneth Clark,* of Clark & Shelton, of Hill City, argued the cause and was on the
brief for appellants.

*Joel R. Kriss,* of Cooper, Shalz & Kriss, of Colby, argued the cause, and *Ronald
S. Shalz* of Cooper, Shalz & Kriss, of Colby, and *John S. Dean, Jr.* and *W. Edward
Nichols,* of Dean and Nichols, of Topeka, were with him on the brief for
appellees.

*Curt T. Schneider,* attorney general, and *Jonathan P. Small,* assistant attorney
general, were on the brief for the Attorney General of Kansas, *amicus curiae.*

The opinion of the court was delivered by

HOLMES, J.: This action was instituted by a group of taxpayers
(appellants) under K.S.A. 60-907(*a*) seeking an injunction pre-
venting defendants from issuing hospital bonds in the amount of
$3,760,000.00 under the provisions of K.S.A. 1976 Supp. 19-1878.
They now appeal from an order sustaining defendants' motion for
summary judgment and overruling plaintiffs' motion for sum-
mary judgment.

G.S. 1939 Supp. 19-1854 through 19-1859, inclusive, became
effective on February 25, 1938. This Act, passed apparently for
the benefit of Thomas County, provided a procedure for certain
counties to issue bonds for the purpose of constructing, estab-
lishing, completing and equipping a county hospital. On April 4,
1938, the Board of County Commissioners of Thomas County, by
resolution, declared their intention to issue bonds in the amount

of $15,000.00 for construction of a new hospital as provided by the Act. Notice of their intent was published as required. The hospital bonds were issued and, with additional funds received from the federal government and the Sisters of St. Agnes, the hospital was established.

Under the authority of G.S. 1939 Supp. 19-1856, the new hospital was leased on October 20, 1941, to the Northwest Kansas Hospital Association, a Kansas corporation, which in turn subleased on October 21, 1941, to the Sisters of St. Agnes.

The Sisters of St. Agnes operated the hospital until October 10, 1973, at which time the lease was terminated and the hospital reverted to Thomas County. The Board of County Commissioners of Thomas County appointed a Board of Trustees pursuant to K.S.A. 19-1803 to take over management and operation of the hospital. The Board of Trustees continues to oversee the operation of the hospital.

The Thomas County Hospital, through its Board of Trustees, entered into an agreement with Hospital Management Corporation, a Delaware corporation, for it to provide professional management of the hospital. Hospital Management Corporation has been employed by the hospital Board of Trustees for approximately 4 years and provides similar services to many hospitals throughout the United States.

Hospital Management Corporation also specializes in providing expertise in promoting, planning, constructing, equipping, and staffing new hospitals and assisting with the transition from an old facility to a new facility. On February 1, 1976, the Thomas County Hospital Board of Trustees and Hospital Management Corporation entered into a second agreement referred to as the Project Management Agreement. The objective of the Project Management Agreement is that a new hospital be constructed that will be properly planned as to size, equipment, staffing, etc., to meet the needs of the area at the lowest possible cost. The Board of County Commissioners ratified the Project Management Agreement on April 5, 1976. As a part of the agreement Hospital Management Corporation was to receive a fee of $200,000.00 for its services. This fee was contingent upon the completion and sale of the necessary bond issue and the successful promotion of the hospital became of prime concern to Hospital Management Corporation. The record also indicates that the Thomas County

Board of County Commissioners entered into a contingent fee contract in the approximate amount of $66,000.00 with the then County Attorney for he and certain associates selected by him to do the legal work required by the proposed bond issue. There is nothing in the record to disclose whether these contingent fees were to be paid from the proceeds of the sale of the bonds or from other sources.

As required by the Regional Health Programs Act, (then K.S.A. 65-2a01, *et seq.*), a request for a certificate of need was presented on April 28, 1976, by Hospital Management Corporation and James D. Daher, as administrator of the hospital, to the Far Northwest Region Health Planning Council. Mr. Daher, as Chairman of the Far Northwest Region Health Planning Council, issued a letter dated April 29, 1976, to the Thomas County Commissioners advising that the Council had approved the request for new hospital facilities. K.S.A. 65-2a06 (since repealed) required, as a part of the request for a certificate of need, the applicant to furnish certain information to be considered by the planning agency in determining whether such a certificate should be issued. Included in the required information is a statement of the "projected cost estimates of capital expenditures and operating expenses." The request for the certificate of need presented to the planning council on April 28, 1976, indicated estimated costs of construction, site development and equipment in a total amount of $3,015,000.00. Six days later, on May 3, 1976, the hospital trustees, acting under K.S.A. 19-1878, certified to the Thomas County Board of Commissioners that funds in the amount of $3,760,000.00 were needed to build, furnish and equip a new hospital. No explanation appears in the record of the discrepancy between $3,015,000.00 and $3,760,000.00.

That same day, the Board of County Commissioners passed a resolution authorizing and directing notice to be given to the electorate of Thomas County of the intention to issue bonds to provide funds to build and equip a hospital in accordance with K.S.A. 19-1878. Notice was published and protests were filed in sufficient numbers to require that the question of issuing bonds be voted on by the electorate of Thomas County.

On October 4, 1976, the Board of County Commissioners, by resolution, authorized the submission to the electorate, pursuant to K.S.A. 19-1878, of the proposition of issuing $3,760,000.00 in

general obligation bonds for the purpose of constructing, furnishing and equipping a hospital. Notice, as required by K.S.A. 10-120, was provided by publication in the official county newspaper. In addition to the legally required notice, the proposition of issuing the bonds received extensive coverage by the local news media. There was a great deal of discussion, both pro and con, concerning the need for the hospital and whether the hospital would result in additional taxes. It was repeatedly pointed out that the existing hospital constructed in 1938-1941 had been self-supporting and although general obligation bonds were to be issued by Thomas County, it was anticipated that no taxes would be necessary to retire the bonds or operate the hospital.

The election was held on November 2, 1976, with a vote of 3,137 in favor of the bonds and 1,032 opposed.

This action was filed by plaintiffs on January 5, 1977, to enjoin the issuance and delivery of the bonds.

On June 2, 1977, the trial court sustained defendants' motion for summary judgment and overruled plaintiffs' motion for summary judgment. This appeal followed.

Appellants raise numerous points on appeal attacking the validity of the proceedings leading up to the issuance of the bonds. The trial court in its opinion pointed out:

"The issuance of bonds which plaintiffs seek to enjoin are to be issued under authority of K.S.A. 19-1878. If this statute does not apply to the Thomas County Hospital or does not apply under the procedure used here, the plaintiffs are entitled to an injunction."

We are of the opinion K.S.A. 19-1878 does not apply to the case at bar. 1949 G.S. 19-1878 was the forerunner of our current statute. Pertinent parts of the original statute read:

"*Whenever a county hospital has been established in any county under the provisions of article 18 of chapter 19 of the General Statutes of 1935 and acts amendatory thereof and supplemental thereto, and bonds have been issued* or a tax levy made by the county as authorized by the election establishing such hospital, *the board of county commissioners of said county shall, upon receiving the written certification of the board of trustees of said hospital, that proceeds from the bonds issued* or taxes levied, plus all other funds available *are insufficient to acquire a site, or build an addition to a present hospital or build and equip a hospital of the size and capacity necessary to supply the needs of said county and stating the amount needed to complete the erection and equipping of said hospital, issue additional bonds of said county if said original funds were raised by bond issue* . . . but not to exceed one-half of the original amount authorized to be issued for the purpose of acquiring a site, erecting and equipping said hospital or addition thereto: . . . ." (Emphasis added)

The statute also included extensive provisions for protests leading to an election and limiting the amount of taxes that could be levied in the first instance and the amount of any additional taxes levied.

The statute has remained virtually unchanged except for modifications of the limitations on the amount of additional bonds which may be issued and a reduction in the percentage of protests required to force an election.

In 1961 the statute was amended to provide that the amount of additional bonds which may be issued could not exceed the original amount authorized.

In 1977 (K.S.A. 1977 Supp. 19-1878) the limitation on the amount of additional bonds which might be issued was eliminated altogether. This amendment in 1977 was enacted at the request and for the benefit of Thomas County and the bond issue here in question. The original bond issue of 1938, which established the existing Thomas County Hospital, was only in an amount of $15,000.00. The additional funds necessary at that time to establish the existing hospital were furnished by the federal government through the Works Progress Administration and by the Sisters of St. Agnes. It appears that the appellees, having attempted to proceed under K.S.A. 19-1878, found themselves in the embarrassing position of their proposed new bond issue being limited to $15,000.00 when they actually wanted $3,760,000.00. The 1977 amendment which removed the limitation was made retroactive in an attempt to salvage the Thomas County bond issue.

The legislative history of article 18, chapter 19 of K.S.A. and its forerunners reveals that the article consists of numerous pieces of special legislation, couched in general terms, and adopted from time to time since 1913 to allow or remedy an existing situation in some particular county. As a result we do not have a comprehensive county hospital code that can be uniformly applied and relied upon throughout the state.

"The fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute." *Easom v. Farmers Insurance Co.*, 221 Kan. 415, Syl. 2, 560 P.2d 117.

When a statute is plain and unambiguous the court must give

effect to the intention of the legislature as expressed rather than determine what the law should or should not be. *Lakeview Gardens, Inc. v. State, ex rel, Schneider,* 221 Kan. 211, 557 P.2d 1286.

A reasonable reading of K.S.A. 19-1878 discloses no ambiguity which needs judicial construction if ordinary principles are applied to the interpretation of the statute in its entirety.

A careful study of K.S.A. 19-1878 reveals it was never intended to authorize bonds to build an entirely new hospital on a new site. The statute clearly contemplates a situation where, after the original bond issue (or tax levy), the hospital trustees discover the bonds authorized (or taxes levied) are insufficient "to acquire a site or build an addition to a present hospital, or build and equip a hospital of the size and capacity necessary to supply the needs of said county." Any other construction of the statute would completely nullify the various limiting provisions formerly contained in the statute as to the amount *authorized to be issued* and the provision that the county may, upon proper certification, *issue additional bonds to complete the erection and equipping of said hospital.* We may inquire, "additional to what?" If the emphasized wording taken from the statute is to have any meaning it must refer to the original issue authorized to establish the hospital in the first instance. Appellees argue, and are supported by several opinions of various Kansas attorneys general, that the limiting proviso applies only to a tax levy made and not to original bonds issued.[1] We think not. Such an interpretation completely ignores the limitations on additional tax levies and the use of the word "issued" in the limiting proviso of the statute. Taxes are not issued, and bonds are not levied. As appellees point out, it would be unrealistic and unreasonable in light of current economic conditions, or those of 1949 when the statute was enacted, to tie a limitation on a bond issue for a new hospital to the amount of a bond issue for a hospital built in 1938. Consequently, it appears obvious that the legislature intended the statute to be a method of supplementing an existing bond issue or tax levy which is found to be insufficient for its original purposes.

---

1. It is interesting to note that the opinions relied upon by appellees were all issued pursuant to requests inquiring about additions and/or improvements to existing facilities. None were in response to inquiries relating to the financing of an entirely new facility. (See opinions dated August 12, 1960, June 1, 1966, February 1, 1968, and December 4, 1973.)

The overwhelming vote of the citizens of Thomas County indicates the desire and need for a new hospital and it is indeed unfortunate that the proceedings were not commenced under proper statutory authority. However, it is beyond the power of this court to grant relief to the electorate and the same may be rectified only by appropriate proceedings by the local county officials utilizing the proper statutory authority.

Appellants raise numerous other questions in their appeal, including allegations of misconduct and also questioning the legality and propriety of the contingent fee contracts with the county attorney and Hospital Management Corporation.

In view of the decision reached, it is not necessary for the court to consider the other points on appeal.

The judgment of the court below is reversed with directions to enter judgment for the plaintiffs.

SCHROEDER, C.J., and OWSLEY, J., dissenting.