No. 50,685

JOHN PRATT, *et al., Appellants,* v. BOARD OF COUNTY COMMISSIONERS OF THOMAS COUNTY, *et al., Appellees.*

(597 P.2d 664)

Opinion filed July 14, 1979.

*Kenneth Clark,* of Clark and Shelton, of Hill City, argued the cause and was on the brief for the appellants.

*Sam W. G. Lowe,* of Lowe, Starkey, and Wilks, of Colby, argued the cause and *H. David Starkey,* of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought pursuant to K.S.A. 60-907 by a group of Thomas County taxpayers against their Board of County Commissioners to obtain an injunction against the issuance of general obligation bonds for the construction of a new hospital. The plaintiffs appeal from orders sustaining the defendants' motion for summary judgment, overruling the plaintiffs' motion for summary judgment, and granting an extension of a certificate of need. The controversy, which arose out of the proposed construction of a hospital in Thomas County, was previously before the court in *Thomas County Taxpayers Ass'n v. Finney,* 223 Kan. 434, 573 P.2d 1073 (1978). This case arose as a result of events which occurred subsequent to that decision.

Certain facts in the case are not in dispute. They are as follows: In 1938 a county hospital was established in Thomas County by

resolution of the board of county commissioners. That year, bonds were issued by the county for the construction of the new hospital in accordance with G.S. 1939 Supp. 19-1854 through 19-1859, which became effective on February 25, 1938. The hospital was completed using the funds obtained from the hospital bonds plus additional funds from the federal government and the Sisters of St. Agnes. The new hospital was leased on October 20, 1941, to the Northwest Kansas Hospital Association, which in turn subleased to the Sisters of St. Agnes on October 21, 1941. The Sisters of St. Agnes operated the hospital until October 10, 1973. At that time the lease was terminated and the hospital reverted to Thomas County. The board of county commissioners appointed a board of trustees, pursuant to K.S.A. 19-1803, to take over management and operations of the hospital.

Early in 1976, the hospital board of trustees decided that it would be for the best interests of the people of Thomas County for a new hospital to be constructed on a different site. The board of trustees entered into an agreement with Hospital Management Corporation, a Delaware corporation, for it to provide professional management of the hospital and also to assist the board of trustees in getting the new hospital constructed. In order for a hospital to be constructed, a certificate of need was required by the Regional Health Programs Act (then K.S.A. 65-2a01 *et seq.*). Pursuant to that act, a request for a certificate of need was presented on April 28, 1976, by Hospital Management Association and James D. Daher, as administrator of the hospital, to the Far Northwest Region Health Planning Council. The request for a certificate of need was approved the next day, April 29, 1976. On May 3, 1976, the hospital trustees, acting under K.S.A. 19-1878, certified to the Thomas County Board of Commissioners that funds in the amount of $3,760,000 were needed to build, furnish, and equip a new hospital. That same day, the board of county commissioners passed a resolution authorizing and directing notice to be given to the electorate of Thomas County of the intention to issue bonds to provide the necessary funds to build and equip a hospital in accordance with K.S.A. 19-1878. Protests filed were sufficient to require the question of issuing bonds to be voted on by the electorate of Thomas County. The election was held on November 2, 1976. A majority of the voters voted in favor of the bonds.

On January 5, 1977, a number of Thomas County taxpayers filed an action for an injunction to enjoin the issuance and delivery of the bonds. The district court granted the defendants' motion for summary judgment and the taxpayers appealed to the Supreme Court. That appeal was decided in *Thomas County Taxpayers Ass'n v. Finney,* 223 Kan. 434. This court determined that K.S.A. 19-1878 did not provide the statutory authority to authorize the board of commissioners to issue general obligation bonds for the construction of an entirely *new* hospital on a *new* site. The court concluded that the legislature, by the enactment of K.S.A. 19-1878, intended the statute to provide a method of supplementing an existing bond issue or tax levy which is found to be insufficient for its original purposes. The case was reversed with directions to the district court to enter judgment in favor of the plaintiff taxpayers.

The opinion in that case was filed on January 21, 1978, at which time the 1978 legislature was in session. At the request of Thomas County officials, the Kansas legislature enacted section 1, of chapter 99, 1978 Session Laws, now found in K.S.A. 1978 Supp. 19-18,128. The new statute specifically authorizes the issuance of general obligation bonds for the purpose of constructing, equipping, and furnishing a *new* county hospital building or facility, separate and apart from an existing county hospital. The mandate in the first case was filed for record in the district court of Thomas County on March 27, 1978.

At this point, the board of trustees and the board of county commissioners, now having statutory authority for the issuance of bonds to construct a new hospital, determined to proceed with their plans to construct a new hospital in Thomas County. Their first concern was to be certain there was in existence a valid certificate of need, which was required by K.S.A. 1978 Supp. 19-18,128 before an election could be held for approval of the issuance of hospital bonds. It should be noted that the board relied upon the certificate of need for hospital construction which had previously been issued by the Far Northwest Regional Planning Council on April 27, 1976. In the course of the litigation in the first case, Dwight F. Metzler, Secretary of the Department of Health and Environment, on March 7, 1977, under the authority of K.S.A. 1978 Supp. 65-4815, extended the certificate of need issued for St. Thomas Hospital for a period of twelve months

beyond its expiration date of April 28, 1977. On October 12, 1977, the Department of Health and Environment advised the hospital trustees that the department considered that "the clock would stop for that period of time during which litigation is being resolved and that the department considered that the clock stopped on the certificate of need on January 4, 1977 (when *Taxpayers v. Finney* was filed) and would not be restarted until that suit was resolved." The department then advised on March 22, 1978, that the certificate of need had been extended to February 3, 1979. On October 5, 1978, the Department of Health and Environment apparently had a change of mind in regard to its authority to extend a certificate of need beyond the one-year period authorized by K.S.A. 1978 Supp. 65-4815. On that date, the director of the department wrote a letter to the administrator of St. Thomas Hospital advising him that the department could not administratively stop the clock because of pending litigation and that authority for such an extension would have to be determined by the district court. The board of trustees and the board of county commissioners concluded that the original certificate of need continued to be a valid certificate of need sufficient to provide authority for the construction of a new hospital.

On July 3, 1978, pursuant to K.S.A. 1978 Supp. 19-18,128, the board of county commissioners, by resolution, authorized the submission to the electorate of the proposition to issue $3,925,000 in general obligation bonds for the purpose of constructing, equipping, and furnishing a new county hospital separate and apart from the existing facility. In calling this election, the board relied on the assurance of the Kansas Department of Health and Environment that the certificate of need, previously issued, was valid and subsisting. On August 1, 1978, the bond election was held with a vote of 1,787 in favor of the issuance of the bonds and 983 opposed. The board of county commissioners thereafter published notice of the proposed sale of general obligation bonds to be conducted on September 13, 1978. On September 12, 1978, the day before the scheduled bond sale, this action was filed in which the plaintiffs, as taxpayers, sought to enjoin the issuance and delivery of the general obligation bonds. The basis of the plaintiffs' action was (1) that the defendants did not have a valid certificate of need as required by K.S.A. 1978 Supp. 19-18,128, and (2) that no license had been issued for the new county

hospital as required by K.S.A. 1978 Supp. 65-4802. Both of the parties filed motions for summary judgment. The trial court sustained the defendants' motion for summary judgment, overruled the plaintiffs' motion, and dismissed the action on the basis that the defendants were entitled to judgment as a matter of law. In addition, as a part of its judgment, the district court found that the certificate of need should be extended by order of the court for a period of six months and fifteen days from the date the present litigation is finally resolved.

The plaintiffs raise several issues on the appeal. The primary issue is whether the defendants had a valid certificate of need at the time of the second bond election. In addition, the plaintiffs raise other issues, some of which were raised in the first case and not decided.

At the outset, the defendants challenge the right of the plaintiffs to maintain this action. Stated simply, the defendants contend that the plaintiffs lack standing to challenge the certificate of need granted by the regional health planning council on April 29, 1976. They maintain that, once a certificate of need is granted, rights of appeal are vested only in the applicant, in an appropriate health systems agency, or in another health facility as provided in K.S.A. 65-2a07 and 1978 Supp. 65-4809. If no appeal is taken by one of those parties within thirty days, the agency decision to issue the certificate of need is final. The defendants further contend that the present action constitutes a collateral attack on the issuance of a certificate of need which is outside the purview of the statutory appeal provisions. The trial court, in granting summary judgment to the defendants, agreed with defendants that the plaintiffs lacked standing to challenge the validity of the certificate of need. We have concluded that the district court was in error in so holding.

The plaintiff taxpayers challenged the issuance of the general obligation bonds under the authority of K.S.A. 60-907(*a*), which provides: "Injunctive relief may be granted to enjoin the illegal levy of any tax, charge or assessment, the collection thereof, or any proceeding to enforce the same." Section (*c*) of 60-907 provides that any number of persons whose property is or may be affected or whose taxes may be increased by the illegal acts may join in the petition for injunction. The plaintiffs correctly point out that they had no right to challenge the issuance of the

certificate of need in the original hearing and that they did not have a right of appeal at the time the certificate of need was issued. As noted above, appeals from the issuance of a certificate of need are provided only to the applicant, to a health system agency, or to another health facility. It cannot be denied that the issuance of general obligation bonds to construct the hospital may result in an increase of taxes on the property of the plaintiffs. They had no other means of challenging the claimed illegality of defendants' action other than through a proceeding brought pursuant to K.S.A. 60-907. As we pointed out in *Seltmann v. Board of County Commissioners,* 212 Kan. 805, 512 P.2d 334 (1973), when his pocketbook is affected, a taxpayer is guaranteed a statutory remedy under K.S.A. 60-907. It is clear from the record in this case that the relief sought by the plaintiffs is precisely that mentioned in the statute and, therefore, plaintiffs were entitled to bring this action.

We turn now to the primary issue presented on the appeal: Whether the defendants held a valid certificate of need, as required by K.S.A. 1978 Supp. 19-18,128, at the time of the second bond election on August 1, 1978. A determination of this issue requires a consideration of the history of health planning legislation and programs in this country during the past several years. Congressional interest in group health planning and resources development began with the enactment of the Hill-Burton program in 1946. That program provided for funds for the construction of needed new hospitals, but it contemplated that the states would receive those funds in accordance with a planning process in which the states would be surveyed as to their needs for additional medical facilities. In 1964, the Hill-Burton act was modified by legislation authorizing the funding of regional or area wide health facilities planning agencies. In 1966, the Comprehensive Health Planning and Public Health Services Amendments (P.L. 89-749) authorized a two-year program of federal support for comprehensive health planning and public health service. Statutory modifications occurred by amendments enacted in 1967 and 1970. The need for strengthened and coordinated planning for personal health services became more apparent every day. It was obvious that overbuilding of health facilities had occurred in many areas and that there was a maldistribution of health services.

In response to the various federal programs, legislation was enacted in Kansas to implement them on a statewide basis. In 1967, the legislature enacted K.S.A. 65-190 *et seq.,* providing for comprehensive statewide health planning by the state board of health, which was authorized by K.S.A. 65-194 to adopt rules and regulations to establish standards and procedures for the preparation and administration of comprehensive statewide health planning. K.S.A. 65-192 authorized the establishment of a state health planning council to advise the state board of health in regard to comprehensive health planning as provided for by public law 89-749. In 1972, the legislature enacted K.S.A. 65-2a01 *et seq.,* which provided for regional health programs and required that a certificate of need be obtained before additional health or medical facilities could be constructed in this state. Although this legislation has been criticized as being somewhat vague (*Extendicare v. State Coordinating Council for Health Planning,* 216 Kan. 527, 532 P.2d 1119 [1975]), a statutory scheme for health planning and certification was created with the following elements:

(1) A request to build a new hospital was to be sent to the state licensing agency (State Board of Health) and referred by it to a regional planning agency. K.S.A. 65-2a02.

(2) The application for a certificate of need was either approved or disapproved by the *regional* planning agency. K.S.A. 65-2a02 and 65-2a03.

(3) Certain specified information was required to be contained in the application for a certificate of need, including projected cost estimates of capital expenditures and operating expenses, and a schematic plan if construction was included in the application. K.S.A. 65-2a06.

It is important to note that K.S.A. 65-2a01 *et seq.* was passed to provide comprehensive health planning in compliance with public law 89-749 passed by the United States Congress.

In 1974, Congress took a different approach and enacted P.L. 93-641 (42 U.S.C.A. § 300k [West Supp. 1974-1978]). The new law was titled "National Health Planning and Development." Under the new act, regional planning agencies were to be replaced by a state agency in each state whose function it was to approve certificates of need. In response to the new federal

legislation, the 1976 Kansas legislature enacted K.S.A. 65-4801 *et seq.*, pertaining to health facilities within the state. This legislation became effective July 1, 1976, and required that an application for a certificate of need be submitted to and approved by the *state agency* which, by definition in K.S.A. 1976 Supp. 65-4801, was to be the Secretary of Health and Environment. K.S.A. 1976 Supp. 65-4802 specifically provided that a certificate of need and license had to be obtained "under the provisions of this act" before a new health facility project could be undertaken. An application for a license had to "include a certificate of need issued by the *state* agency." K.S.A. 1976 Supp. 65-4803. This legislation included K.S.A. 1976 Supp. 65-4818, which provided that the 1976 act did not apply "to any health facility project undertaken prior to the effective date of this act for which a certificate of need was not required at the time such project was undertaken or to a health facility project granted a certificate of need prior to the effective date of this act . . . ." The 1976 legislation provided for the continuing validity of certificates of need previously issued under the provisions of K.S.A. 65-2a01 *et seq.* which had been extended under the provisions of K.S.A. 65-2a08, where the period of extension was still in effect. It was this statutory exception to the application of the 1976 act that the defendants relied on in the litigation which was before the court in *Thomas County Taxpayers Ass'n v. Finney*, 223 Kan. 434.

As noted above, in *Thomas County Taxpayers Ass'n v. Finney*, 223 Kan. 434, this court held that there was no statutory authority as of the date of the opinion, January 21, 1978, to authorize the issuance of general obligation bonds to build *an entirely new hospital on a new site.* Such authority was then provided by K.S.A. 1978 Supp. 19-18,128 which states as follows:

"The board of county commissioners of any county is hereby authorized to issue general obligation bonds of such county, in such sum as may be authorized by an election called and held thereon, for the purpose of acquiring a site for and constructing, equipping and furnishing a new hospital building or facility, separate and apart from an existing county hospital or for the purpose of constructing enlargements and additions to and equipping and furnishing an existing county hospital and the acquisition of ground necessary therefor. No such bonds shall be issued until the question of their issuance shall have been submitted to and have been approved by a majority of the electors voting thereon at an election called and held for such purpose. *If the proposed project is a project which requires the issuance of a certificate of need under the provisions of K.S.A. 1978 Supp. 65-4801 et seq. prior to being undertaken, no election shall be called and*

*held on the question of issuing bonds to undertake the project until a certificate of*
*need has been obtained under the provisions of K.S.A. 1978 Supp. 65-4801 et seq.*
The notice of such election and the proposition on the ballot therefor shall state
the purpose for which bonds are to be issued and the amount of the bonds to be
issued therefor. Such election shall be noticed, called and held and such bonds
shall be issued, sold, delivered, registered and retired in the manner provided by
the general bond law. Revenue derived from the operation of any such county
hospital may be used for the purpose of paying the principal of, and the interest
upon, bonds issued under the authority of this section." (Emphasis supplied.)

It is important to note that the statute declares that no election
shall be held presenting the question to the electors until a
certificate of need has been obtained under the provisions of
K.S.A. 1978 Supp. 65-4801 *et seq.* It is this language in K.S.A.
1978 Supp. 19-18,128 which has brought about the controversy in
the case now before us.

K.S.A. 1978 Supp. 19-18,128 was originally contained in House
Bill 3254, which did not contain the language italicized in the
statute above. The additional language, requiring the issuing of a
certificate of need before the holding of a bond election, was
added to the statute by an amendment made in the Senate. The
minutes of the Senate Committee on Ways and Means dated
March 30, 1978, show the amendment in the following language:

"A substitute conceptual motion was made by Senator Berman and seconded by
Senator Gaines to amend HB 3254 by incorporating the requirement of a prior
issuance of a certificate of need from the Department of Health and Environment
before elections are held. The substitute motion carried by voice vote."

The Senate amendment to HB 3254 was accepted by the House
and HB 3254 was enacted by the House in the form now found at
K.S.A. 1978 Supp. 19-18,128. In addition to the enactment of
K.S.A. 1978 Supp. 19-18,128, the 1978 legislature amended sev-
eral sections of article 48 of chapter 65 but did not amend K.S.A.
1976 Supp. 65-4818 which is discussed above.

In support of their position, the plaintiffs contend that K.S.A.
1978 Supp. 19-18,128 clearly requires that a certificate of need be
issued by the *state agency* as a prerequisite to the calling of a
bond election for the construction of a new hospital. They argue
that the certificate of need relied on by the defendants, which was
issued by the regional planning agency on April 29, 1976, had
long since expired and, furthermore, that it was void because of
certain procedural defects existing at the time that certificate of
need was issued. The plaintiffs maintain that the 1978 statute,
K.S.A. 19-18,128, contemplates that a new certificate of need be

issued by the *state agency* before a new bond election could be held.

The defendants contend that the certificate of need issued by the regional planning agency on April 29, 1976, was, at the time the second bond election was held and still is, a valid, subsisting certificate of need. The defendants rely upon K.S.A. 1976 Supp. 65-4818. They argue that the effect of K.S.A. 1976 Supp. 65-4818 is that neither the 1976 act nor the 1978 act is applicable to a project for which there had been previously granted a certificate of need by a regional planning agency under the 1972 act, K.S.A. 65-2a01 *et seq.* They conclude that the old certificate of need held by the defendants is valid and was sufficient to authorize the second bond election on August 1, 1978, and the issuance of the bonds.

The issue raised by the parties presents a difficult question of statutory interpretation. We have concluded from a careful study of the various statutes that the certificate of need issued by the regional planning council on April 29, 1976, was not a valid certificate of need sufficient to meet the requirements of K.S.A. 1978 Supp. 19-18,128. We have reached this conclusion for two reasons. In the first place, we are convinced from a reading of K.S.A. 1978 Supp. 19-18,128 that the legislature contemplated that a certificate of need from the state agency, as required by K.S.A. 1978 Supp. 65-4801 *et seq.,* would be obtained prior to the issuance of bonds for the construction of a new hospital facility separate and apart from an existing county hospital. Such a requirement, in our judgment, is contained in the specific language of K.S.A. 1978 Supp. 19-18,128 that no election shall be called and held on the issuance of bonds to undertake the project until a certificate of need has been obtained under the provisions of K.S.A. 1978 Supp. 65-4801 *et seq.* The legislative history discussed above indicates that was the legislative intent. Furthermore, the obtaining of a certificate of need from a state agency would be in compliance with the federal legislation (P.L. 93-641, 42 U.S.C.A. § 300k) which brought about the enactment of K.S.A. 65-4801 *et seq.* in 1976.

In addition, we have concluded that at the time the bond election was held on August 1, 1978, the certificate of need previously issued by the regional planning council on April 29, 1976, had expired. Under the provisions of K.S.A. 65-2a08, the

approval of a certificate of need terminated twelve months after the date of the approval unless the applicant had commenced construction and was diligently pursuing the same to completion, or unless the approval was extended voluntarily by the health planning agency for a period *not exceeding twelve months* upon good cause shown for the extension. A similar provision is contained in the 1976 act (K.S.A. 1976 Supp. 65-4815). There is no statutory authority for either the state agency or a district court to extend the life of a certificate of need more than twelve months beyond the initial one-year period of approval. There is nothing in the statute which authorizes extension of the life of a certificate of need pending the determination of litigation over the construction of a hospital facility. This is a subject which has been addressed and determined by the legislature. The legislature, by K.S.A. 1978 Supp. 65-4815, has limited to one year the period in which the approval of a certificate of need may be extended by the state planning agency. The clearly expressed legislative intent should be enforced. Neither the state agency nor a district court may extend the period for approval of a certificate of need beyond the statutory period of one year. In the case now before us, even assuming that the certificate of need was validly issued in the first place, the certificate, having been approved and granted on April 29, 1976, could not legally be extended beyond April 29, 1978.

Plaintiffs also contend that the defendants had no authority to issue general obligation bonds for the construction of a new hospital without first obtaining a license for the new hospital issued by the licensing agency as required by K.S.A. 1978 Supp. 65-427 and 65-428. Plaintiffs base their position on K.S.A. 1978 Supp. 65-4802 which provides as follows:

"No person shall undertake a project described in K.S.A. 1978 Supp. 65-4805 unless a certificate of need has been obtained under the provisions of this act; *nor shall any person undertake a project prior to licensing which requires a certificate of need under the provisions of K.S.A. 1978 Supp. 65-4803.*"

That statute requires licensing before a project for the construction of a new hospital is *undertaken.* At what point is a project for a new hospital *undertaken?* We have concluded that K.S.A. 1978 Supp. 65-4802 does not require the obtaining of a license for the new hospital prior to the time a bond election is held for public approval of the issuance of general obligation bonds. At that point, it would serve no useful purpose for the board of county

commissioners to obtain a license for the operation of the proposed hospital. Until the people have approved the issuance of the bonds for the financing of the hospital, there would seem to be no sound reason for obtaining a license for its operation. However, we are convinced that K.S.A. 1978 Supp. 65-4802 does require the obtaining of a license for the operation of the hospital prior to the time general obligation bonds are issued and sold to the general public. The sale of such bonds would create contractual obligations on the part of the board of county commissioners. It is logical to conclude that a project for the construction of a new hospital has been undertaken at the time bonds are issued and sold. Thus, we agree with the plaintiffs that the defendants had no authority to issue and sell general obligation bonds until they had first obtained a license for the new hospital issued by the licensing agency, the Department of Health and Environment.

The other points raised on the appeal pertaining to the illegality of the procedures followed by defendants in obtaining the certificate of need in 1976, need not be considered in view of the fact we have held the certificate of need to be invalid and insufficient to support the second-bond election held on August 1, 1978.

The judgment of the district court is reversed with directions to enter judgment in favor of the plaintiffs.