No. 50,089

STATE *ex rel.* DWIGHT F. METZLER, Secretary of Department of Health and Environment, *Appellant,* v. SISTERS OF CHARITY OF LEAVENWORTH HEALTH SERVICES CORPORATION, d/b/a ST. FRANCIS HOSPITAL AND MEDICAL CENTER, *Appellee.*

(605 P.2d 100)

Opinion filed January 19, 1980.

*J. Eugene Balloun,* of Payne & Jones, Chartered, of Olathe, argued the cause and *L. Franklin Taylor,* of the same firm, was with him on the brief for appellant.

*Austin Nothern,* of Eidson, Lewis, Porter & Haynes, of Topeka, argued the cause and *John H. Wachter,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by the State from a decision denying its application for a permanent injunction against the defendant-appellee, St. Francis Hospital. The action was brought by the Secretary of Health and Environment seeking to enjoin St. Francis Hospital from implementing an open heart surgery unit without first obtaining a certificate of need, which the Secretary alleged was required under the provisions of K.S.A. 1977 Supp. 65-4801 *et seq.*

The United States Congress, in 1974, enacted the National Health Planning and Resources Development Act (42 U.S.C. § 300k *et seq.*). The act creates a structure for carrying out health planning and dictates health resources allocation and regulation. Regulations are imposed upon the various states and are enforced by the mechanism of withholding federal funding from states that do not comply. The Kansas Legislature, in order to take advantage of federal funding and to comply with the federal

regulations, passed in 1976 comprehensive certificate of need legislation (L. 1976, ch. 280), now codified as K.S.A. 1978 Supp. 65-4801 *et seq.* One of the goals of this legislation is to prevent unnecessary duplication of health resources and facilities which will theoretically prevent higher medical costs resulting from duplication. The statutes require any health care facility that wishes to undertake expansion, a new construction project, adoption of new major services, etc., to obtain a certificate of need by application to the Secretary of Health and Environment.

In 1974, St. Francis Hospital and Stormont-Vail Hospital, two of the major health care facilities in Topeka, desired to embark upon major expansion programs and submitted applications for certificates of need under the appropriate statutes which existed prior to the enactment of K.S.A. 1976 Supp. 65-4801 *et seq.* Stormont-Vail proposed to add 118 beds and establish a cardiac (open heart) surgery unit. St. Francis proposed to add 115 beds and establish facilities for high voltage radiation (cancer) therapy. The requested certificates of need were approved in 1975 and both hospitals have proceeded with the authorized expansions and additional services.

In early 1978, officials of St. Francis decided to implement their own cardiac surgery unit and discussed such plans with representatives of the Department of Health and Environment. On March 22, 1978, Richard J. Morrissey, Associate Director of the department, directed a letter to St. Francis which stated, in part:

"During our meeting you informed us of plans to open a Cardiac Surgery Unit at St. Francis in the near future. Your application for Certificate of Need specified that you would not provide this service unless existing providers of the service were unable to meet the demand. . . . *Under the current Certificate of Need Statute, 65-4811, et seq., you will be required to obtain a Certificate of Need for this service if the capital expenditure involved exceeds $150,000.* The Kansas Legislature has approved amendments to the current statute (H. B. 3199) that, when approved by the Governor, will require that you obtain a Certificate of Need for this service regardless of the capital expenditure involved." (Emphasis added.)

St. Francis determined that the capital expenditure for the necessary equipment to establish a cardiac surgery unit in their then existing facilities would be $48,291.36. With this information defendant proceeded to secure the equipment and implement the cardiac surgery unit without applying for a new certificate of need. The unit is now installed and in use.

The Secretary of the Department of Health and Environment,

pursuant to K.S.A. 1977 Supp. 65-4820, then brought this action in the name of the State to permanently enjoin St. Francis from establishing a cardiac surgery unit until it obtained an amendment to its existing certificate of need. A temporary restraining order was issued, ex parte, April 7, 1978, and the hearing on the application for a permanent injunction commenced April 17, 1978. Following testimony which took the greater part of five days, the trial court found for the defendant, St. Francis, dissolved the temporary restraining order and denied plaintiff's request for a permanent injunction. The Secretary has appealed.

At the outset we might observe that while Stormont-Vail Hospital was not a named party to this action, it appears to have been vitally interested in the outcome and provided testimony and evidence on behalf of the Secretary.

The first point on appeal is that the trial court erred in finding St. Francis did not need a certificate of need to implement its open heart surgery program. The learned trial judge found that K.S.A. 1977 Supp. 65-4801 *et seq.,* did not require such a certificate. The pertinent statutes in force at the time provided:

K.S.A. 1977 Supp. 65-4802:

"No person shall undertake a project described in K.S.A. 1976 Supp. 65-4805 unless a certificate of need has been obtained under the provisions of this act."

K.S.A. 1977 Supp. 65-4805:

"(*a*) Projects requiring a certificate of need before they are undertaken include, and shall be limited to, the following:

(1) The construction of a new health facility.

(2) The construction of additional bed capacity in a health facility.

"(*b*) *The following projects require a certificate of need if a capital expenditure, as defined in subsection (c), is required to complete the project:*

(1) Modernization of an existing health facility.

(2) *Substantial changes in the services of a health facility resulting in the addition of a clinically related diagnostic, curative or rehabilitative service not previously provided in the facility.*

(3) The termination of a service which had previously been provided in the facility.

(4) The acquisition of a health facility or part thereof or equipment for a health facility obtained under lease or comparable arrangement or through donation, the expenditure for which would have been considered a capital expenditure if the person had acquired the facility or equipment by purchase and the fair market value of which exceeds the minimum amount specified in subsection (c) of this section.

"(*c*) As used in this section 'capital expenditure' means an expenditure, including an expenditure for a construction project undertaken by the facility as its own

contractor, which, under generally accepted accounting principles, is not properly chargeable as an expense of operation and maintenance and which exceeds one hundred fifty thousand dollars ($150,000). The total individual project cost shall be limited to all depreciable assets to be owned or used by the health facility as a result of the project and which would normally be capitalized under generally accepted accounting procedures.

"(d) *Where the estimated costs of a proposed project,* including cost escalation factors appropriate to the area in which the project is located, *is certified, within sixty (60) days of the date on which the obligation for such expenditure is incurred, by a registered architect or licensed professional engineer to be one hundred fifty thousand dollars ($150,000) or less, such expenditure shall be deemed not to exceed one hundred fifty thousand dollars ($150,000) regardless of the actual costs of such project.* Where the actual cost of the project exceeds one hundred fifty thousand dollars ($150,000), the health facility on whose behalf such expenditure is made shall provide written notification of such cost to the state agency not more than thirty (30) days after the date on which such expenditure is incurred. Such notification shall include a copy of the certified estimate." (Emphasis added.)

On April 14, 1978, Janis Vilums, Jr., a registered architect who had worked on the previous expansion of St. Francis Hospital, executed a certificate in which he certified that the equipment necessary to implement the cardiac surgery unit at St. Francis Hospital would cost $48,291.36. The certificate states it is certified in accordance with K.S.A. 1977 Supp. 65-4805(d). The court found the architect's certificate to be sufficient and ruled that under the statute St. Francis was not required to obtain a certificate of need from the Department of Health and Welfare.

The Secretary argues that the certificate of need statutes were enacted to bring Kansas into conformance with the federal regulations under the National Health Planning and Resources Development Act of 1974 and that the court should have looked to the federal statutes and regulations to determine the legislative intent behind K.S.A. 1977 Supp. 65-4805. The appellant points out that under federal HEW guidelines (43 Fed. Reg. 13040 to 13050 [1978]), the "limitations of certain resources, such as open heart units, can lead to improvements in quality of care while at the same time containing costs" (43 Fed. Reg. 13040 [1978]). St. Francis contends the statute is clear and unambiguous and by its specific terms does not require an amendment to the existing certificate of need and does not require a new certificate of need because the capital expenditure was less than $150,000.00. Is the statute ambiguous? We think not.

"When a statute is plain and unambiguous the court must give effect to the intention of the legislature as expressed rather than determine what the law

should or should not be." *Thomas County Taxpayers Ass'n v. Finney,* 223 Kan. 434, 438-39, 573 P.2d 1073 (1978).

K.S.A. 1977 Supp. 65-4805 is clear and unambiguous in its terms, and rules of statutory construction do not apply. The statute clearly exempts the St. Francis cardiac surgery unit from its requirements as it was shown the unit would not involve capital expenditures of $150,000.00 or more. Appellant's first point is without merit. In passing, we might comment that the legislature recognized the proper application of the statute and, effective July 1, 1978, amended 65-4805 to require a certificate of need whenever the offering of a new health service is proposed, regardless of the capital expenditure or cost. The amendment came after the establishment of the cardiac unit by St. Francis and is of no consolation to the Secretary in this case.

Appellant's second point is that the trial court erred in not issuing a permanent injunction. The argument appears to be that the action was properly brought under K.S.A. 1977 Supp. 65-4820 and that under the statutes and cases, an injunction should have been granted. There is no question but what the Secretary had the standing and authority to bring the action but, upon the facts in this case, as found by the court and supported by the evidence, the action of St. Francis did not require a certificate of need and, therefore, was not subject to injunction. It is also argued that there had been an agreement between Stormont-Vail and St. Francis, when the 1975 certificates of need for their respective expansions were granted, to the effect that St. Francis would not ask for a cardiac surgery unit and Stormont-Vail would not ask for a radiation therapy unit. The court found that while there may have been some such discussion between the principals of the two hospitals, the certificates of need and the minutes of the regulatory body did not reflect any such agreement. The point is without merit.

The next argument by the Secretary is that the trial court erred in excluding certain proffered expert testimony. Marlon Dauner, Senior Director of Institutional Affairs for Blue Cross and Blue Shield of Kansas, proposed to testify as to the increased costs which would result from the implementation of a second cardiac surgery unit in Topeka. The proffered testimony based upon a hypothetical situation assumed a fact which was not in evidence and was therefore excluded. There was no abuse of discretion in

the trial court's ruling. *Stucky v. Johnson,* 213 Kan. 738, 518 P.2d 937 (1974); K.S.A. 60-456(*b*).

Appellant's final point is the court erred in admitting in evidence the architect's certificate of Janis Vilums, Jr. At the trial plaintiff objected to the introduction of the certificate on the grounds of an insufficient foundation. The first argument is that as the architect based his certificate on information gained from others, it was inadmissible as hearsay. Vilums testified that the information was compiled by members of his architectural firm, under his direction, and he executed the certificate in his capacity as a registered architect and vouched for its contents and accuracy. No error is shown. Next, appellant argues the trial court should have looked behind the certificate and determined the equipment was inadequate and the unit could not be equipped for the amount certified to by the architect. While there was conflicting evidence on these items, the arguments of appellant go to the weight of the evidence and not its admissibility. The decision is supported by sufficient competent evidence and no error is shown. Finally, appellant argues the certificate was not certified "within 60 days of the date on which the obligation for such expenditure is incurred . . . ." in accordance with K.S.A. 1977 Supp. 65-4805(*d*). There were purchase orders admitted in evidence showing the required equipment had been ordered by St. Francis between March 23, 1978 and April 5, 1978. The architect's certificate was dated April 14, 1978. This argument lacks merit.

We have carefully reviewed the entire record and find no error on the part of the trial court.

The judgment is affirmed.