No. 55,684

Robert E. Ullrich, *Plaintiff-Appellee*, v. Board of County Commissioners of Thomas County, Ks.; Jimmy Nickel, Chairman; Vera Sloan, Member; and Ernest Kistler, Member; and The Thomas County Hospital Ass'n., a Kansas Corporation, *Defendants-Appellants*.

AND

No. 55,685

Robert E. Ullrich, *Plaintiff-Appellee*, v. Jimmy Nickel, Vera Sloan, and Ernest Kistler, *Defendants-Appellants*.

(676 P.2d 127)

Opinion filed January 13, 1984.

*Zackery E. Reynolds*, of Fisher, Ochs and Heck, P.A., of Topeka, argued the cause, and *Robert D. Ochs*, of the same firm, was with him on the briefs for the appellant.

*Ronald S. Shalz*, of Shalz, Taylor, Schiffner & Gatz, of Colby, argued the cause,

and *John D. Gatz*, of the same firm, was with him on the brief for the appellee Thomas County Hospital Association.

   *T. J. Carney*, of Turner and Boisseau, Chartered, of Great Bend, argued the cause, and *Casey R. Law*, of the same firm, was on the brief for the appellees Board of County Commissioners of Thomas County, Kansas; Jimmy Nickel, Chairman; Vera Sloan, Member; and Ernest Kistler, Member.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the plaintiff, Robert E. Ullrich, a Thomas County taxpayer, to enjoin the transfer of assets of the Thomas County hospital by the Board of County Commissioners of Thomas County to a private nonprofit corporation, the defendant, Thomas County Hospital Association (TCHA). In a separate action, plaintiff also sued the individual county commissioners to recover the value of all assets previously transferred to the hospital association. The trial court granted summary judgment in favor of the defendants in both cases, and the plaintiff has appealed.

The primary issue in the case is the constitutionality of the Thomas County Hospital Assets Transfer Act (K.S.A. 1982 Supp. 19-18,133 and 19-18,134). The facts are essentially undisputed and are as follows: Since 1976, there has been a dispute among the citizens of Thomas County over whether to build a new hospital. Two earlier cases before this court have addressed other phases of the controversy. In *Thomas County Taxpayers Ass'n v. Finney*, 223 Kan. 434, 573 P.2d 1073 (1978), it was determined that the statute on the authority of which bonds were to be issued to construct a new hospital by the county was not applicable and did not allow for the issuance of the proposed bonds. Later in *Pratt v. Board of Thomas County Comm'rs*, 226 Kan. 333, 597 P.2d 664 (1979), it was held that the county commissioners had no authority to issue and sell general obligation bonds, because there was no properly issued certificate of need as required by K.S.A. 19-18,128. Being unsuccessful in satisfying the legal requirements for construction of a publicly owned and financed county hospital, a group of citizens formed the Thomas County Hospital Association, a private nonprofit corporation. The objective was to have TCHA construct its own hospital and have the county transfer all of the assets owned by the old county hospital to TCHA.

The defendant county commissioners then sought the aid of the legislature to obtain statutory authority to transfer the hospi-

tal assets to TCHA. In 1981, the Kansas legislature enacted K.S.A. 19-18,132, which was designed to give the county commissioners authority to transfer the assets of the hospital. K.S.A. 19-18,132 provided as follows:

"(a) Subject to the provisions of subsection (b), in any county having a population of more than 8,000 and less than 9,000 and an assessed tangible valuation of more than $55,000,000 and less than $58,000,000 and in which is located a county hospital which is to close and terminate its operations pursuant to an election held in accordance with the provisions of K.S.A. 19-18,130 and 19-18,131, the board of county commissioners of such county and the board of hospital trustees of such county hospital may transfer and convey to the governing body of the new general hospital located in such county, for the use and benefit of such hospital and for the benefit of the residents of such county, all or part of the assets of the county hospital as the board of county commissioners and the board of hospital trustees may determine. Such transfer and conveyance of assets is in consideration of continuation of medical care services by such new general hospital, and is deemed to be a public purpose. These assets shall include, but not be limited to, unencumbered moneys, certificates of deposit, accounts receivable, reserve or bank accounts, supplies, inventory, equipment, fixtures and real estate used by or owned by the county hospital. Transfers and conveyances under this subsection (a) may be made from time to time as deemed appropriate by such board of county commissioners and such board of hospital trustees.

"(b) No transfer and conveyance of all or part of the assets of the county hospital authorized under subsection (a) shall be made until a special election has been held on the question of such transfer and conveyance and a majority of the votes cast on such question are in favor thereof. The election shall be held on a date set by the board of county commissioners. The question shall appear on the ballot as provided in K.S.A. 25-605 and 25-605a. Notice of such election and conduct thereof shall be in accord with the general bond law except as otherwise provided in this act.

"(c) If a majority of the votes cast on the question submitted under subsection (b) are in favor thereof, the board of county commissioners and the board of hospital trustees of the county hospital shall perform all acts necessary or suitable to carry out the intent of this act."

It should be noted that the statute was worded in the language of so-called bracket legislation by making the statute applicable to "any county having a population of more than 8,000 and less than 9,000 and an assessed tangible valuation of more than $55,000,000 and less than $58,000,000 and in which is located a county hospital which is to close and terminate its operations pursuant to an election held in accordance with the provisions of K.S.A. 19-18,130 and 19-18,131 . . ." K.S.A. 19-18,132 required an election and prior approval of the transfer by a majority of the voters in the county.

On April 7, 1981, a county election was held in Thomas County, and the transfer of hospital assets was approved by a majority of the voters. Thereafter, the plaintiff reached the conclusion that the assessed tangible valuation of Thomas County was greater than the $58,000,000 limitation provided for in the statute and questioned whether or not the statute could be applicable to Thomas County. Plaintiff then brought the first of these two consolidated lawsuits to challenge the transfer of hospital assets from Thomas County to TCHA. While the action was pending, the 1982 legislature enacted the Thomas County Hospital Assets Transfer Act (K.S.A. 1982 Supp. 19-18,133 and 19-18,134) which provides as follows:

"19-18,133. **Transfer of assets of Thomas county hospital to Thomas county hospital association authorized.** (a) In order to facilitate the transfer of hospital operations in Thomas county from the Thomas county hospital to the Thomas county hospital association, the board of county commissioners of Thomas county and the board of trustees of the Thomas county hospital are hereby authorized to transfer and convey to the Thomas county hospital association, a private, non-profit corporation, all or part of the assets of the Thomas county hospital as they may determine appropriate. Such transfer and conveyance of assets are in consideration of continuation of medical care services and assumption of certain liabilities of the Thomas county hospital by the Thomas county hospital association, and are deemed to be for a public purpose. These assets may include, but need not be limited to, unencumbered moneys, certificates of deposit, accounts receivable, reserve or bank accounts, supplies, inventory, equipment, fixtures and real estate used by or owned by the Thomas county hospital. Transfers and conveyances under this subsection (a) may be made from time to time as deemed appropriate by the board of county commissioners of Thomas county, Kansas and the board of trustees of the Thomas county hospital. The authority granted by this section is in addition to any other authority granted by law.

"(b) Conveyances and other instruments appropriate to transfer all or part of the assets used by or owned by the Thomas county hospital to the Thomas county hospital association shall be executed by the chairman of the board of county commissioners of Thomas county."

"19-18,134. **Citation of act.** This act shall be known and may be cited as the Thomas county hospital assets transfer act."

It should be noted that the transfer act abandoned the reference to counties with a certain population and assessed tangible valuation. It specifically named Thomas County as the county to be affected by the legislation.

In order to avoid the dispute over the application of the 1981 statute raised by plaintiff's initial petition, the defendants decided to utilize the 1982 transfer act to effectuate the transfer of assets from Thomas County to TCHA. So that none of the assets

already in the hands of TCHA could be challenged as being improperly transferred, those assets previously transferred were transferred back to Thomas County. The county commissioners then made one blanket transfer of all the hospital property back to TCHA. Transfers from the county to TCHA have continued since that time. Thereafter, the plaintiff amended his petition to challenge the 1982 transfer act as being unconstitutional (1) as special legislation in violation of Article 2, Section 17, of the Kansas Constitution and (2) on the basis that the transfer act was unconstitutional because it authorized the transfer of public money and assets to a private corporation. While this action was pending, plaintiff filed the second of these consolidated actions against the individual county commissioners seeking damages for wrongful transfer of county property. The issues in the two cases were identical, and the trial court granted summary judgment in favor of the defendants in both cases. The plaintiff appealed.

The plaintiff's first point on the appeal is that the transfer act (K.S.A. 1982 Supp. 19-18,133 and 19-18,134) is unconstitutional as a violation of Article 2, Section 17, of the Kansas Constitution which since 1974 has provided as follows:

"§ 17. **Uniform operation of laws of a general nature.** All laws of a general nature shall have a uniform operation throughout the state: *Provided,* The legislature may designate areas in counties that have become urban in character as 'urban areas' and enact special laws giving to any one or more of such counties or urban areas such powers of local government and consolidation of local government as the legislature may deem proper."

The present version of Article 2, Section 17, was adopted by the people at the general election in 1974. The 1974 amendment completely eliminated language previously contained in that section providing that "in all cases where a general law can be made applicable, no special law shall be enacted." This language was in the original version of Article 2, Section 17, as adopted in 1859 and it was retained in subsequent amendments passed in 1906 and 1954.

In the recent case of *Stephens v. Snyder Clinic Ass'n,* 230 Kan. 115, 631 P.2d 222 (1981), the opinion discusses in depth Article 2, Section 17, and its history from its original adoption in 1859 to the present time. In the *Stephens* opinion (230 Kan. at 127), Article 2, Section 17, is analyzed as follows:

"Article 2, Section 17, in its present form, was revised and adopted by the people at the general election of 1974. It now provides as set forth above at the beginning of the discussion on this point. It is important to note that the 1974 amendment of Article 2, Section 17, has completely eliminated the second sentence which provided that 'in all cases where a general law can be made applicable, no special law shall be enacted.' It is thus to be emphasized that Article 2, Section 17, of the Kansas Constitution as of 1981, simply requires that all laws of a general nature shall have a uniform operation throughout the state. The effect of this change is that the only prohibition contained in Article 2, Section 17, relates to laws of a general nature which affect the people of the state generally. Such laws must apply uniformly throughout the state and thus be *geographically* uniform. We, therefore, hold that Article 2, Section 17, of the Kansas Constitution as it exists today is not applicable to constitutional challenges based upon a denial of equal protection of the laws not involving a claim of lack of geographical uniformity."

It should be noted that in *Sossoman v. Board of County Comm'rs,* 230 Kan. 210, 630 P.2d 1154 (1981), there is language in the opinion on page 212 which might be interpreted to mean that Article 2, Section 17, in its present form still prohibits special legislation.

We wish to make it clear at this time that since the 1974 revision of Article 2, Section 17, the enactment of special legislation by the Kansas legislature is no longer prohibited by that section, and the Kansas legislature has the authority to enact special legislation applicable to a single county without the legislation being subject to attack under the provisions of Article 2, Section 17, as special legislation. We hold that under Article 2, Section 17, special legislation, as such, is no longer prohibited even when a general law might have achieved the same purpose. As stated in *Stephens,* the only legislation now prohibited by Article 2, Section 17, is legislation of a general nature which does not operate with geographical uniformity throughout the state.

We do not anticipate that any great problem will arise from this interpretation of Article 2, Section 17. The home rule amendment to the Kansas Constitution, Article 12, Section 5, has given to the cities of Kansas the power to determine their local affairs without requiring action by the legislature. Counties have likewise been granted broader home rule powers by the legislature through the enactment of K.S.A. 1982 Supp. 19-101a. We, therefore, affirm the trial court in its judgment that the Thomas County Hospital Assets Transfer Act (K.S.A. 1982 Supp. 19-18,133 and 19-18,134) is not in violation of Article 2, Section 17, of the Kansas Constitution.

The plaintiff's next point on the appeal is that the Kansas legislature acted beyond its constitutional power in authorizing the transfer of Thomas County assets to a private corporation, the Thomas County Hospital Association. Simply stated, the plaintiff maintains that Section 2 of the Kansas Bill of Rights, which provides that no special privileges or immunities shall ever be granted by the legislature, prohibits the legislature from authorizing the transfer of public property to private corporations and individuals. He contends that the transfer act constitutes a special privilege granted by the legislature to the Thomas County Hospital Association, a private corporation over which Thomas County taxpayers have no control. He argues that there can be no public purpose for a new hospital in a county the size of Thomas County, where there is existing a public hospital which is now providing all of the necessary services.

The defendants, in response, maintain that the law of Kansas has never prohibited the transfer of public funds or property to private individuals or corporations in all cases. Rather, the general proposition of law recognized by our cases is that the transfer of public property cannot be made *without compensation when no public benefit would result from the gift*. Defendants contend that the transfer of assets to the hospital association in this case was made for a valuable consideration and with a clear public purpose and public benefit in mind. Here the transfer of assets was made for a real and valuable consideration, since the hospital association in the Indemnification and Assumption Agreement assumed any and all liabilities arising out of the operation of the Thomas County hospital including accounts payable, leases, third party adjustments, profit sharing and pension obligations, and any other liabilities or costs incurred. In addition, the hospital association agreed to indemnify the county for losses arising out of the operation of the hospital other than for negligence and malpractice claims. The defendants also contend that the transfer of assets to the hospital association was for a public purpose, since promoting the public health is clearly within the legislative power.

In determining this issue, it would be helpful to consider some of the general principles of law governing the transfer of public property to private individuals and corporations. The generally

recognized rule is that a state legislature may appropriate public money or property for private individuals, if thereby the public welfare is promoted. If the purpose of the expenditure of public money is legitimate because for a public purpose, it will not be defeated because the execution of it involves payments to individuals, or private corporations.

What is for the public good or what are public purposes for which appropriations may be made are questions which the legislature must in the first instance decide? In determining those questions, a state legislature is vested with a broad discretion, which cannot be controlled by the courts, except when its action is clearly evasive or violative of a constitutional provision. It has been said that a strict formula to determine public purposes for all times cannot be formulated, since the concept expands with the population, economy, scientific knowledge, and changing conditions. As people are brought closer together in congested areas, the public welfare requires governmental operation of facilities which were once considered exclusively private enterprises, and necessitates the expenditure of tax funds for purposes which were not classified as public. What is a public purpose for which public funds may be expended is not a matter of exact definition, and the line of demarcation is not immutable or incapable of adjustment to changing social and economic conditions that are properly of public and governmental concern. 63 Am. Jur. 2d, Public Funds § 59.

Since almost the beginning of our judicial history, the decisions of this court have upheld a grant of public funds to a private corporation if a public purpose is shown. In *Leavenworth Co. v. Miller*, 7 Kan. *479 (1871), it is stated in Syllabus ¶ 13 as follows:

"The government may accomplish a public purpose through the means of a private agency, a private individual or individuals, or a private corporation. It is the ultimate object to be obtained which must determine whether a thing is a public or a private purpose. The ultimate object of the government in granting municipal aid to railroads is to increase the facilities for travel and transportation from one part of the country to the other, which object is, in its nature, a public purpose."

In *Central Branch U.P.R. Co. v. Smith*, 23 Kan. *745 (1880), it is stated that an attempted grant of public aid to an individual or a private corporation cannot be sustained, *unless,* upon the face of the law or record, it appears that the grant is to subserve some public purpose. The same rule was recognized in *Hicks v. Davis,*

97 Kan. 312, 315, 154 Pac. 1030 (1916); *State, ex rel., v. Urban Renewal Agency of Kansas City,* 179 Kan. 435, 296 P.2d 656 (1956); and *State, ex rel., v. City of Pittsburg,* 188 Kan. 612, 364 P.2d 71 (1961).

The question then is presented whether the transfer of county assets to the Thomas County hospital in this case was for a public purpose. We agree with the trial court that the operation of the hospital by TCHA in this case is for a public purpose. We think it obvious that promoting the public health is within the power of the legislature, and that hospitals promote the public health. If private enterprise can be used to eradicate urban blight or if cities can issue industrial revenue bonds to promote private industry, it should reasonably follow that private enterprise may be used in an attempt to promote the health of the citizens of Thomas County. We, therefore, hold that the trial court was correct in finding that the Kansas legislature, by enacting the transfer act (K.S.A. 1982 Supp. 19-18,133 and 19-18,134), did not violate Section 2 of the Kansas Bill of Rights by authorizing the board of commissioners of Thomas County to transfer county hospital assets to the Thomas County Hospital Association.

The judgment of the district court is affirmed.