BILL L. DUCKWORTH and CHEMOLD SYSTEMS, INC., *Appellants*, v. THE CITY OF KANSAS CITY, KANSAS, *Appellee*.

(758 P.2d 201)

Opinion filed April 29, 1988. █

*Edward H. Powers, Sr.*, of Kansas City, argued the cause and was on the brief for appellants.

*Jody Boeding*, assistant city attorney, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The plaintiffs, Bill Duckworth and Chemold Systems, Inc., filed the present action seeking declaratory relief against the City of Kansas City, Kansas. The plaintiffs' petition alleged that development loans authorized by the City of Kansas City were illegal and unconstitutional. The plaintiffs appeal the order of the district court granting the City's motion for dismissal.

For the purpose of this appeal, the facts as stated in the plaintiffs' petition are accepted as true. In 1986, the plaintiffs remodeled property located at 846 State Avenue in Kansas City, Kansas, at a cost of $600,000. The plaintiffs financed their improvements of the property by obtaining private financing at 12% interest. On April 28, 1987, the plaintiffs applied for $150,000 in municipal community development funds from the City in order to make their property barrier-free for the purpose of hiring handicapped persons. The plaintiffs were informed on June 5, 1987, that their request would not be approved. The City did not assign any reason for its refusal other than a statement that other projects had priority.

The plaintiffs' petition also contends that, at approximately the same time, the City had decided to approve a loan of $2,000,000 to Robert G. Cotitta to remodel a building in downtown Kansas City. The petition states that the loan to Cotitta provided for 8% interest and deferred any substantial payments upon the loan for the first five years. Cotitta is a "bad credit risk" according to the plaintiffs' petition, which alleges that Cotitta had defaulted on a prior $200,000 loan from the City. The plaintiffs' petition also challenges the City's issuance of grants and loans of approximately $250,000 to the Granada Theatre in downtown Kansas City, Kansas. The plaintiffs allege that the recipients of these development funds from the City "will have a competitive advantage over the plaintiffs" because they will be able to rent their facilities "for less than the plaintiffs because of the lower interest rate and deferred payments agreed to by the City." The plaintiffs contend that the issuance of the loans by the City was made without appropriate standards and is unjust, discriminatory, and unconstitutional. In addition, plaintiffs contend that the method by which the loans were budgeted violates K.S.A. 79-2927 and K.S.A. 79-2934.

The plaintiffs first challenge the constitutionality of the municipal development loans by the City both on due process and equal protection grounds. A review of our decisions relating to the constitutional authority of governmental agencies to issue economic assistance requires us to reject plaintiffs' contention. In *Ullrich v. Board of Thomas County Comm'rs*, 234 Kan. 782, 676 P.2d 127 (1984), this court recognized that, as a general rule, the state legislature may appropriate public money for private

individuals so long as the appropriation promotes the public welfare. In *Ullrich*, this court stressed that the wisdom of a particular public policy could not be decided by the courts, but must be resolved by the legislature.

"What is for the public good or what are public purposes for which appropriations may be made are questions which the legislature must in the first instance decide. In determining those questions, a state legislature is vested with a broad discretion, which cannot be controlled by the courts, except when its action is clearly evasive or violative of a constitutional provision. It has been said that a strict formula to determine public purposes for all times cannot be formulated, since the concept expands with the population, economy, scientific knowledge, and changing conditions. As people are brought closer together in congested areas, the public welfare requires governmental operation of facilities which were once considered exclusively private enterprises, and necessitates the expenditure of tax funds for purposes which were not classified as public. What is a public purpose for which public funds may be expended is not a matter of exact definition, and the line of demarcation is not immutable or incapable of adjustment to changing social and economic conditions that are properly of public and governmental concern." 234 Kan. at 789.

Although the issue in *Ullrich* was the constitutionality of transferring assets from the county hospital to a private nonprofit hospital, the rationale for our decision is applicable to the present case:

"The question then is presented whether the transfer of county assets to the Thomas County hospital in this case was for a public purpose. We agree with the trial court that the operation of the hospital by TCHA in this case is for a public purpose. We think it obvious that promoting the public health is within the power of the legislature, and that hospitals promote the public health. If private enterprise can be used to eradicate urban blight or if cities can issue industrial revenue bonds to promote private industry, it should reasonably follow that private enterprise may be used in an attempt to promote the health of the citizens of Thomas County." 234 Kan. at 790.

In *State, ex rel., v. City of Pittsburg*, 188 Kan. 612, 364 P.2d 71 (1961), and *State ex rel. Tomasic v. City of Kansas City*, 237 Kan. 572, 701 P.2d 1314 (1985), this court upheld the constitutionality of governmental assistance of private economic development for the purpose of promoting the overall economic welfare of the general public. Although both cases involve the grants of industrial revenue bonds rather than the issuance of loans by a city, the analysis for constitutional purposes is identical.

In *State, ex rel., v. City of Pittsburg*, this court upheld the constitutionality of the issuance of revenue bonds, stressing the limited ability of the courts to review the wisdom of a particular

legislative enactment as long as the enactment was designed to serve a public purpose. We said:

"From a purely legal standpoint, the rule in this state, as elsewhere, is that courts are concerned only with the power to enact statutes and cannot concern themselves with the wisdom of legislative acts. Courts neither approve nor condemn legislative policy, and their sole function is to determine the validity of a challenged act when measured by applicable constitutional provisions. [Citations omitted.] For the removal of unwise laws from the statute books, appeal lies not to the courts but to the ballot and to the processes of democratic government." 188 Kan. at 623.

We adopted the same view later in *State ex rel. Tomasic v. City of Kansas City.* As long as a governmental action is designed to fulfill a public purpose, the wisdom of the governmental action generally is not subject to review by the courts. We said:

"As a general rule of constitutional law, courts have been reluctant to rule on public policy matters since these involve legislative deliberation and judgment. This court stated in *Gunkle v. Killingsworth*, 118 Kan. 154, 157, 233 Pac. 803 (1925), '[w]ithin the scope of legislative power, the legislature itself is the judge of what exemptions are in the public interest and will conduce to the public welfare.' Therefore, in determining whether K.S.A. 79-201a *Second* was designed to promote the public welfare, we must follow a policy of judicial restraint unless we find the judgment of the legislature was 'entirely devoid of a rational basis.' *State, ex rel., v. Board of Regents*, 167 Kan. [587, 207 P.2d 373 (1949)] at 596." 237 Kan. at 579.

The standards for review of the constitutionality of the challenged governmental actions in the context of the equal protection clause is also directed at the existence of a rational basis for the governmental actions. In *Manhattan Buildings, Inc. v. Hurley*, 231 Kan. 20, 643 P.2d 87 (1982), the court reviewed the rules relating to such cases.

" 'Our next concern is whether the statute offends the equal protection clause. When considering this question we must first determine the proper test. Traditionally, the yardstick for measuring equal protection arguments has been the "reasonable basis" test. The standard was set forth in *McGowan v. Maryland*, 366 U.S. 420, 425-26, 6 L. Ed. 2d 393, 81 S. Ct. 1101:

" ' ". . . The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. . . .'"

" 'In *Dandridge v. Williams*, 397 U.S. 471, 25 L. Ed. 2d 491, 90 S. Ct. 1153, reh. denied 398 U.S. 914, 26 L. Ed. 2d 80, 90 S. Ct. 1684, it was stated:

" ' "' . . . If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78. . . ." (p. 485.)' " 231 Kan. at 30 (quoting *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 614-16, 576 P.2d 221 [1978]).

The same rule was announced in *Clark v. Walker*, 225 Kan. 359, 590 P.2d 1043 (1979). We said:

"In our examination of a challenged statute, we are obliged to presume that the statute is constitutional; it is the duty of the person attacking the statute to overcome that presumption. *Henry v. Bauder*, 213 Kan. 751, 518 P.2d 362 (1974); *Tri-State Hotel Co. v. Londerholm*, 195 Kan. 748, 408 P.2d 877 (1965). Our consideration of the constitutionality of the statute requires us to apply the 'minimum rationality' or 'reasonable basis' test. *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 576 P.2d 221 (1978); *Henry v. Bauder; Tri-State Hotel Co. v. Londerholm.* See also *Dandridge v. Williams*, 397 U.S. 471, 25 L. Ed. 2d 491, 90 S. Ct. 1153, *reh. denied* 398 U.S. 914 (1970). Under that test, a statute is 'rationally related' to an objective if the statute produces effects that advance, rather than retard or have no bearing on, the attainment of the objective. So long as the regulation is positively related to a conceivable legitimate purpose, it passes scrutiny; it is for the legislature, not the courts, to balance the advantages and disadvantages." 225 Kan. at 366.

There is nothing in the record to contradict the City's statement of its purpose in issuing its initial loan to the Granada Theatre. The City's resolution approving the issuance of the loan stated that its purpose was to

"augment the redevelopment activities of the downtown area and insure further economic development and revitalization of the Central Business District in the battle against slum and blight by upgrading the appearance of the neighborhood and further this project will unify the efforts of many different groups all striving for the overall goal of downtown redevelopment."

The district court found that the loans were designed to serve a valid and legitimate public service, stating:

"Plaintiffs do not allege and I cannot contemplate the existence of facts to support a finding that the city council's judgment was entirely devoid of a rational judgment. It is common public knowledge that the downtown Kansas City, Kansas business area has steadily deteriorated over the past years, notwithstanding the fact that almost all governmental buildings and affairs remain and are conducted in the downtown area. It is also common knowledge that the city has expended considerable effort and public funds over the past several years to revitalize the downtown business area because it is the gateway to Kansas City, Kansas. Plaintiffs might be inclined to argue that such past actions have met with little success. They could conceivably present evidence that the council's present actions will not achieve the stated goal. Any such argument or evidence, however, is not relevant to the issue before the court—that being

whether public funds are being used for a legitimate public purpose. As the elected officials and governing body of Kansas City, Kansas, the city council has the right to determine in the first instance how to achieve the goal of revitalization of the downtown area. It is not for this court to second-guess the council in deciding whether their actions will be successful."

We agree. The need for redevelopment efforts in the central city area of major urban centers is an important public concern, the legitimacy of which cannot be reasonably questioned. In addition, the plaintiffs have failed, in the present case, to present any support for the view that the issuance of the municipal development loans was arbitrary and wholly without any rational relationship to the purpose which the City sought to achieve. The plaintiffs may take issue with the wisdom of granting the municipal development loans to individuals other than themselves, but the courts are not the proper forum for reviewing the City's wisdom in issuing those loans.

Plaintiffs argue in their brief to this court that defendant City has conceded the arbitrary nature of the loans in question. The argument the plaintiffs make is essentially that the City, by accepting the truthfulness of the factual allegations contained in the petition for the purposes of consideration of the motion to dismiss, also admitted to those portions of the petition characterizing the issuance of the loans as arbitrary, discriminatory, and without standards. Although the consideration of a motion to dismiss requires accepting the factual allegations contained in a petition as true, there is nothing which requires a court to treat the legal conclusions contained within the petition as also being true. The petition's allegations that the loans were arbitrary, discriminatory, and without standards were not facts, but legal conclusions, the truth of which the City has not admitted but has continued to vigorously deny. Plaintiffs also argue that the issuance of the loans was accomplished without appropriate standards. All of the authority cited by the plaintiffs for this argument relates to cases involving the delegation of power from a legislative body to a subordinate entity. As the district court noted, there is no authority supporting the proposition that a legislative body (whether the state legislature or, as here, a city council acting under the Home Rule Amendment) is required to comply with standards under which it will pass legislation.

The plaintiffs next contend that the loans violated K.S.A. 79-2927 *et seq.* These statutes require budgets to be balanced.

K.S.A. 79-2935 provides that it is unlawful for a governing body to incur a debt, and any indebtedness "incurred" shall be void. The City, in the instant case, did not incur a debt. We note plaintiffs complain that the district court did not address this issue. The district court's failure becomes understandable upon a reading of the petition. Halfway through paragraph numbered 12 of the thirteen-page petition is the following: "Said expenditure was not only discriminatory and made by ordinance without standards but was an unbudgeted item and unlawful under the provisions of K.S.A. 79-[2927] *et seq*. Such expenditure was from a fund maintained by the defendant City for each Councilman." The petition, and more specifically the quoted sentence, does not state a cause of action based upon a violation of K.S.A. 79-2927 *et seq*.

Finally, the defendant contends that the plaintiffs are estopped from asserting their claim of unconstitutionality of the legislation authorizing the granting of municipal development loans. The City argues that the plaintiffs' action in attempting to obtain loans for the renovation of their own property estops them from arguing the unconstitutionality of the granting of municipal development loans to other individuals. Because of our determination that the municipal development loans are constitutional, it is not necessary to address this issue.

The judgment of the district court is affirmed.