The Honorable Vincent K. Snowbarger State Representative, Twenty-Sixth District 1451 Orleans Drive Olathe, Kansas 66062
Dear Representative Snowbarger:
You request our opinion regarding administration of the medical student loan act, K.S.A. 1992 Supp. 76-380 et seq., by the university of Kansas school of medicine. You explain that recently an applicant from Johnson county discovered that the school of medicine gives priority to students from counties other than Douglas, Johnson, Sedgwick, Shawnee and Wyandotte when determining who will receive loans under the act. You question whether it is legal for the school to "discriminate" on the basis of urban or rural residence of the applicant.
K.S.A. 1992 Supp. 76-382(a), as amended by L. 1993, ch. 160, sec. 3, establishes the medical student loan program at the university of Kansas school of medicine. Subject to appropriations therefore, the university is authorized to make loans to undergraduate medical students enrolled in or admitted to the school of medicine in a course of instruction leading to the degree of doctor of medicine upon agreement by such students to 1) complete the course of study and the required residency training program, 2) obtain a license to practice medicine and surgery in the state of Kansas, 3) engage in the full-time practice of medicine and surgery in a service commitment area for the agreed upon period of time and commence such practice within 9 months of completing residency training and licensure, 4) maintain such records and make such reports as are required by the university to document compliance with the agreement, and 5) agree to repay the loan if the terms of the agreement are not met. K.S.A. 1992 Supp. 76-383. The only other statutory limitation on who may receive a loan is that preference must be given to qualified applicants who were Kansas residents at the time of entry into the university of Kansas school of medicine. L. 1993, ch. 160, sec. 3(e), effective April 22, 1993.
The university of Kansas is a state agency. K.S.A. 1992 Supp. 76-712. State administrative agencies, as creatures of statute with no inherent powers, have only such powers as have been conferred upon them by law, either expressly or by clear implication. Woods v. Midwest ConveyorCo., Inc., 231 Kan. 763, 770 (1982), appeal after remand 236 Kan. 734
(1985). Generally, when powers are expressly conferred on a government officer or agency, the power is implied to take such reasonable means as may be necessary for effective exercise of the powers conferred and discharge of the duties imposed. Board of Commissioners or EdwardsCounty v. Simmons, 159 Kan. 41, 53 (1944). The power to make loans to medical students has been expressly conferred on the university of Kansas school of medicine. K.S.A. 1992 Supp. 76-382(a), as amended. Because the university is limited by appropriations, there may be occasions when the number of qualified applicants exceeds the number of loans available. Therefore there exists a necessary implication that the university may establish and implement a policy for determining how applications will be prioritized beyond the state residency consideration. The question then becomes whether the basis chosen by the university is constitutionally sound.
The principal of equal protection is not offended simply because the exercise of power may result in some inequality. Manzanares v. Bell,214 Kan. 589, 609 (1974). It is only invidious discrimination which offends the equal protection clauses of the United States and Kansas constitutions. Ferguson v. Skrupa, 83 S.Ct. 1028, 372 U.S. 726,10 L.Ed.2d 93, 98 (U.S.Kan. 1963); Zerr v. Tilton, 224 Kan. 394, 397
(1978). Traditionally the yardstick for measuring equal protection arguments has been the rational basis test. Bair v. Peck, 248 Kan. 824,831 (1991). Under that test the constitutional safeguard is offended only if the classification rests upon grounds wholly irrelevant to achievement of the agency's objective. State ex rel. Stephan v. Smith,242 Kan. 336, 373 (1987). Applying the rational basis test, the Kansas Supreme Court upheld a regulation used to determine whether a student is a resident or nonresident for fee purposes at state universities. Peckv. University Residence Committee of Kansas State University, 248 Kan. 450,466-467 (1991). Similarly, the rational basis test was applied to uphold a statute providing tuition grants to qualified students enrolled at private colleges and universities but not to those enrolled at state colleges and universities, Americans United for Separation of Church andState v. Bubb, 379 F. Supp. 872, 885-886 (D.C.Kan. 1974), and a municipality's decision to make development loans to some, but not all, developers in the area, Duckworth v. City of Kansas City, 243 Kan. 386,389-391 (1980). We have found nothing which would indicate a higher degree of scrutiny is necessary when priority for a student loan is based on the applicant's residing in a rural area of the state.
Applying the rational basis test to the university's student loan policy, we are unable to say that the policy of giving preference to rural applicants is devoid of a rational relationship to the purpose of the loan act. K.S.A. 1992 Supp. 76-383 requires loan recipients to agree to practice in a service commitment area. "Service commitment area" is defined in K.S.A. 1992 Supp. 76-381(c) as "(1) any community within any county in Kansas other than Douglas, Johnson, Sedgwick, Shawnee or Wyandotte county, (2) any state medical care facility or institution, (3) any medical center operated by the veterans administration of the United States, or (4) the full-time faculty of the university of Kansas school of medicine in family medicine or family practice." While there are alternatives to practicing in one of the rural areas of the state, the main thrust of the act is to encourage full-time practice in such areas. According to information received from the university, it is believed that "growing up in a rural environment is the consistent predictor of practice in a rural environment." Letter from D. Day Clawson, M.D., Executive Vice Chancellor, University of Kansas Medical Center, to the Honorable Mark Parkinson, State Senator, dated June 21, 1993. The university has a legitimate interest in attempting to foster and ensure compliance with the service commitment agreements. It is therefore our opinion that the university of Kansas school of medicine may legally differentiate between urban and rural applicants when determining how to allocate limited medical student loans to Kansas residents under K.S.A. 1992 Supp. 76-380 et seq.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
RTS:JLM:jm