Thomas R. Powell Bond Counsel for the City of Wichita 2000 Epic Center 301 North Main Street Wichita, Kansas 67202-4820
Dear Mr. Powell:
As bond counsel for the city of Wichita you seek our opinion concerning the proposed city of Wichita east bank hotel project ("project") and the financing of the project with city of Wichita ("city") general obligation bonds.
The city proposes to issue the bonds pursuant to a charter ordinance exempting the city from K.S.A. 13-1024c. For our information you provide a copy of the charter ordinance and a proposed authorizing ordinance which authorizes the city to issue general obligation bonds for the hotel, conference center and parking garage. You also include a copy of a report titled AHistory and Justification for a Downtown Convention Hotel prepared by the city's department of finance. The report details the need for a convention hotel center in downtown Wichita and was prepared with the objective of establishing that the project serves a valid public purpose.
As background information you note that the project will consist of a hotel which will cost approximately $31,000,000 and a conference center and a parking garage that will cost approximately $5,000,000 each. The plan calls for $9,300,000 of the cost of the hotel to be paid for from the city's general obligation bonds, and the conference center and garage to be paid for 100% by city general obligation bonds. The developer will provide an equity contribution of approximately $5,100,000 for the hotel and the remaining approximate $15,000,00 for the hotel will be provided by financial institutions through loans made to the developer.
The hotel improvements and underlying land will be owned by the city and will be leased to the developer for a period of 99 years. The hotel will be a Hyatt with a minimum of 300 rooms. The parking garage containing approximately 500 parking spaces will be owned by the city. Three hundred of the spaces will be reserved for use by the hotel, with the remaining 200 spaces available to the general public at all times. The development agreement between the city and the developer will provide that the parking garage at the option of the developer will be managed by the developer or the city. The conference center will be owned by the city and will be managed and operated by the developer under a 99 year management agreement. The conference center will consist of meeting rooms available for use by the hotel and will also be available for booking of events scheduled at Century II.
The issue presented for our determination is whether the city may properly use its constitutional legislative authority to charter out of K.S.A. 13-1024c and enact a substitute home rule ordinance which authorizes the city to issue general obligation bonds to assist in the financing of a downtown hotel conference center project.
The issue raises two questions, requiring separate analysis. The first question involves whether the city may, through its powers of local legislation granted in article 12, section 5 of the Kansas constitution, charter out of K.S.A. 13-1024c. The second question involves whether construction of a downtown hotel conference center would serve a public purpose therefore justifying city participation in a portion of the financing through the issuance of the city's general obligation bonds.
Examining the first question, whether the city may properly charter out of K.S.A. 13-1024c through its home rule authority, we turn to article 12, section 5 of the constitution. Subsection (c)(1) provides:
 "Any city may by charter ordinance elect in the manner prescribed in this section that the whole or any part of any enactment of the legislature applying to such city, other then enactments of statewide concern applicable uniformly to all cities, other enactments applicable uniformly to all cities, and enactments prescribing limits of indebtedness, shall not apply to such city."
Applying this constitutional standard to K.S.A. 13-1024c, it is necessary to determine whether the statute is uniformly applicable to all cities, or prescribes limits of indebtedness. K.S.A. 13-1024c provides in part that "the governing body of any city of the first class having a population of over two hundred thousand (200,000) is hereby authorized to issue bonds of the city without an election for the purpose of paying for the construction, purchase or improvement of any public improvement. . . . Provided, that the total amount of bonds issued for such purposes in any one year shall not exceed the sum of two hundred thousand dollars ($200,000)."
It is apparent upon reading this statute that while its provisions apply to the city of Wichita, it is not an enactment uniformly applicable to all cities, and thus is a nonuniform statute. [For further discussion on nonuniform statutes, see Blevins v. Hiebert,247 Kan. 1 (1990).] The city may, therefore, elect to exempt itself from the statutory provisions of K.S.A. 13-1024c, and enact substitute provisions pursuant to its constitutional home rule authority.
It is worthwhile to note that an objection could be made to a city charter ordinance out of K.S.A. 13-1024c on the basis that it is a statute prescribing a limit of indebtedness because the statute directs that the total amount of bonds issued under its provisions shall not exceed $200,000 in any one year. This issue, however, was previously examined in Attorney General Opinion No. 80-229, wherein it was determined that a city may exempt itself by charter ordinance from the issue limitations of K.S.A 13-1024a and issue bonds in amounts greater than that authorized by statute.
The opinion concluded that K.S.A. 13-1024a is not an "enactment . . . prescribing limits of indebtedness" within the meaning of that phrase in the home rule amendment. In that opinion, Attorney General Stephan cited another opinion, Attorney General Opinion No. 77-368, which discussed the above quoted phrase regarding limits of indebtedness and determined that the phrase is ambiguous. In the latter opinion, the Attorney General stated that the phrase in question could be said to refer to statutes authorizing the issuance of bonds not to exceed a prescribed amount, such as K.S.A. 13-1024a, or to those statutes which impose aggregate limits of indebtedness, K.S.A. 10-301 et seq. (now K.S.A. 10-306 et seq. and K.S.A. 79-5037). The Attorney General resolved the ambiguity in favor of the latter interpretation and concluded that the phrase "enactments prescribing limits of indebtedness" in the home rule amendment referred only to the above noted limitations on total or aggregate indebtedness, and not to individual statutory limitations on the amounts of issues authorized for particular purposes. Attorney General Opinion No. 77-368, p. 3, and Attorney General Opinion No. 80-229, p. 2. We concur in that interpretation, and find that the limit of indebtedness prescribed in K.S.A. 13-1024c does not pose an impediment to a charter ordinance out of the statute exempting the city from its terms.
We now turn to the second question, whether a valid public purpose is served through the issuance of the city's general obligation bonds to help finance part of the costs of the hotel convention center. The spending authority of a city is always subject to the public purpose doctrine which permits public funds to be spent only for public purposes. Ullrich v. Board of Thomas CountyCommissioners, 234 Kan. 782 (1984). The court found in Ullrich, however, that the governing body may give public funds to private individuals if the public welfare is promoted.
Increasingly, courts are recognizing that economic development is a legitimate public purpose for which funds may be expended. There is a growing acknowledgment that local governments may properly promote private economic development in order to assist or revitalize the public economy. See Ullrich, 234 Kan. at 789;Duckworth v. City of Kansas City, Kansas, 243 Kan. 386 (1988);Burkhartt v. City of Enid, 771 P.2d 608 (Okla. 1989). As articulated in Duckworth, courts presume that a legislative body acts constitutionally, and any challenger must therefore defeat that presumption by establishing that a particular legislative action is not rationally related to a legitimate purpose.Duckworth, 234 Kan. at 389.
The Duckworth case is of special relevance to the issue we address in this opinion. The city contends that through issuance of its general obligation bonds to help finance the downtown hotel convention center project a valid public purpose is served. To illustrate their argument, the city points out that the site where the hotel is to be constructed is in an area of ongoing clearance of slum and blight by an urban renewal project first undertaken by the city more than 30 year ago. The Duckworth case states: "The need for redevelopment efforts in the central city area of major urban centers is an important public concern, the legitimacy of which cannot reasonably be questioned." Duckworth,243 Kan. at 391.
The downtown convention and hotel report prepared by the city department of finance establishes that the hotel project will serve a public purpose in terms of revitalizing the downtown economy finding that the project among other things will:
 "1. Enhance the city standing in the national convention and meeting market.
 "2. Bring large conventions and accompanying visitors to the city and Century II.
"3. Create jobs.
 "4. Increase business for other hotels due to positive latent demand providing an increase in hotel visitor related sales.
"5. Generate significant dollars in revenue for Century II.
"6. Protect the city's other investments in downtown Wichita.
"7. Stimulate other east bank developments."
 A History of and Justification for a Downtown Convention Hotel, Department of Finance, City of Wichita, pages 50, 51 (1995).
We are persuaded by the information presented in the report that the construction of a downtown hotel convention center in the city of Wichita would serve a valid public purpose. There are no state statutes that specifically authorize a municipality to issue its general obligation bonds to finance a hotel. The city may, therefore, use its constitutional home rule authority pursuant to article 12, section 5 of the Kansas constitution to exempt itself from the provisions of K.S.A. 13-1024c and pass a charter ordinance authorizing the issuance of its general obligation bonds to finance a portion of the project. The hotel convention center which will be owned by the city represents a significant public improvement and it is our opinion that the issuance of the city's general obligation bonds serves a valid public purpose.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Rebecca E. Floyd Assistant Attorney General
CJS:JLM:REF:jm