The Honorable Gary A. Merritt State Representative, 20th District 10301 Granada Overland Park, Kansas 66207
Dear Representative Merritt:
You request our opinion concerning the Kansas and Missouri metropolitan culture district compact (compact) which allows public monies from both states to be pooled and used for cultural activities in the Missouri and Kansas counties which are part of the district. Before we respond to your numerous queries, we note that some of your questions require factual determinations. Because the purpose of our opinions is to provide advice on questions of law, we are unable to address your questions of fact as part of this opinion.
The Kansas and Missouri metropolitan culture district compact (K.S.A. 1995 Supp. 12-2536 et seq.) was approved by congress on October 22, 1994 (P.L. 103-390) and provides a mechanism for certain counties in Kansas and Missouri to cooperate in improving their cultural facilities, coordinating the services of their cultural organizations, enhancing the cultural activities of their citizens and achieving financial support for those activities.
K.S.A. 1995 Supp. 12-2536, Article II. (The Missouri counterpart is found at RsMo § 70.500.) In order to create the metropolitan culture district (district) the board of county commissioners of both Johnson county, Kansas and Jackson county, Missouri must adopt a resolution authorizing a county-wide retailers' sales tax. The resolution is then submitted to the electorate. K.S.A. 1995 Supp. 12-2536, Article IV (b)(1); K.S.A. 1995 Supp. 12-2539. Additional counties in Kansas and Missouri may join the district if such counties are contiguous to one or more of the counties which comprise the district and are located within 60 miles of Johnson and Jackson counties. K.S.A. 1995 Supp. 12-2536, Article IV; RsMo § 70.500, Articles IV and X. If the electorate approves the resolution, the tax is levied by the county and collected by the state director of taxation who credits the funds to the metropolitan culture district retailers' tax fund in the state treasury. K.S.A. 1995 Supp. 12-2539; RsMo § 70.500, Article X. The funds are then remitted to the respective county treasurer and appropriated by the county to the metropolitan culture commission (commission). K.S.A. 1995 Supp.12-2539(a)(b); RsMo § 70.500, Article X(a)(b). The district is governed by the commission which is a body corporate and politic composed of resident electors of both states. K.S.A. 1995 Supp. 12-2536, Article V; RsMo § 70.500, Article V. (The commission's powers are listed in article VI at K.S.A. 1995 Supp. 12-2536 and RsMo § 70.500.) The compact continues until either state repeals its statute, notifies the other state and pays the obligations of the commission. K.S.A. 1995 Supp.12-2536, Article IX; RsMo § 70.500, Article IX.
With this background we respond to your questions:
 "1. Does a valid essential public purpose and service result from the creation of the Commission, the implementation of the Act and the establishment of the District, and the financing of the projects described therein as well as the levying of Kansas sales tax in furtherance thereof.
 "2. Is the transfer of Kansas sales tax to the Commission and the usage of Kansas sales tax revenues in Missouri by the Commission a valid appropriation or otherwise transfer of Kansas sales tax funds."
 "11. Is the transfer of Kansas sales tax to the Commission and thereafter the payment of such sales tax revenues to the Union Station Assistance Corporation, a private corporation and the usage of Kansas sales tax revenues in Missouri by the Union Station Assistance Corporation, a private corporation, a valid appropriation or otherwise transfer of Kansas sales tax funds."
These questions address whether the use of public funds to finance the district comports with the public purpose doctrine. The seminal case on the public purpose doctrine is Ullrich v. Board of Thomas County Commissioners, 234 Kan. 782 (1984) where the Supreme Court concluded that a state or local governing body may appropriate public monies for private individuals if the public welfare is promoted.
 "If the purpose of the expenditure is legitimate because it is for a public purpose, it will not be defeated because the execution of it involves payment to individuals, or private corporations.
 "What is for the public good or what are public purposes for which appropriations may be made are questions which the legislature must in the first instance decide. In determining those questions, a state legislature is vested with a broad discretion, which cannot be controlled by the courts, except when its action is clearly evasive or violative of a constitutional provision. It has been said that a strict formula to determine public purposes for all times cannot be formulated, since the concept expands with the population, economy, scientific knowledge, and changing conditions. As people are brought closer together in congested areas, the public welfare requires governmental operation of facilities which were once considered exclusively private enterprises, and necessitates the expenditure of tax funds for purposes which were not classified as public. What is a public purpose for which public funds may be expended is not a matter of exact definition, and the line of demarcation is not immutable or incapable of adjustment to changing social and economic conditions that are properly of public and governmental concern." 234 Kan. at 789.
In Duckworth v. City of Kansas City, 243 Kan. 387 (1988), the Supreme Court concluded that courts should defer to the judgment of a governing body in making the determination of whether the public welfare is served by appropriating public funds for private individuals.
The stated purpose of the compact is to create a district which will contribute to or enhance aesthetic, artistic, historical, intellectual or social development of the general public. K.S.A. 1995 Supp. 12-2536, Article II. In light of the deference paid to legislative bodies by Kansas appellate courts concerning what is a public purpose, it is our opinion that the use of tax funds by the district in promoting the goals of the compact is for a valid public purpose and the payment of those funds to private entities will not defeat that purpose.
 "3. Please find enclosed the proposed ballot language now pending before the Wyandotte County and the Johnson County Board of County Commissioners. Please opine as to the legality or otherwise constitutionality of this ballot language."
Subsection (c)(2) of article IV of the compact provides as follows:
 "(2) The ballot for the proposition in any county shall be substantially the following form:
 Shall a retail sales tax of ______________ (insert amount, not to exceed 1/4 cent) be levied and collected in Kansas and Missouri metropolitan cultural district consisting of the county(ies) of _________________________ (insert name of counties) for the support of cultural facilities and organizations within the district?'
YES NO 
 "The governing body of the county may place additional language on the ballot to describe the use or allocation of the funds."
The proposed ballot question is as follows:
"Shall The Following Be Adopted?
 "Shall a retail sales tax of one-eight (1/8) of one cent be levied and collected in Kansas and Missouri metropolitan culture district consisting of Johnson County, Kansas, Jackson County, Missouri and such other counties which may join the district, including the counties of Wyandotte in Kansas and Clay and Platte in Missouri? The retail sales tax shall terminate upon the collection from the district of $118,000,000. The proceeds of the tax will be used to restore, repair, construct, reconstruct, remodel, acquire, furnish and equip Union Station and a science museum to be known as Science City at Union Station, parking facilities and all things necessary or incidental to this project. The Union Station complex will be owned by Union Station Assistance Corporation, a not-for-profit corporation. The cost of the project is $194,000,000, of which $76,000,000 will be provided by federal and state grants and private contributions. There also will be a $40,000,000 endorsement provided by private contributions to help support operations and maintenance."
It is our opinion that the proposed ballot language substantially conforms to the requirements of the compact.
 "6. In light of the proposed language and resolution language to be considered by the Board of County Commissioners for Wyandotte County and Johnson County, Kansas, please opine as to what will be the consequences of a favorable election relying upon such ballot language should the funds, grants or private contributions not be achieved at the levels described in such ballot language."
We believe your question is whether the election is vitiated if the federal funding and private contributions are less than the amount represented on the ballot. Article IV(c)(2) allows a board of county commissioners to "place additional language on the ballot to describe the use or allocation of funds." The proposed ballot simply informs the electorate of the total cost of the project and what funds, in addition to the sales tax funds, will be used to finance it. This additional information is in keeping with the requirement that a ballot clearly inform the voter concerning the questions submitted by giving the whole picture of a particular project rather than simply a part. Board of Education of the City of El Dorado v. Powers, 142 Kan. 664, 668 (1935); USD No. 259 v. Hedrick, 203 Kan. 478 (1969); Kimsey v. Board of Education, USD 273, 211 Kan. 618 (1973). The fact that federal and private funding may not be forthcoming in the amounts stated in the ballot will not be sufficient to vitiate the election unless the representations on the ballot were misleading. Wycoff v. Bd. of County Comm'rs of Cogan County, 189 Kan. 557 (1962).
 "7. Is the creation of this sales tax, which appears to have no definitive purpose, termination date or other identifying definitive purposes legal or constitutional."
The compact provides that the purpose of a county-wide retailers' sales tax is to finance the operation of the district. K.S.A. 1995 Supp.12-2539. The sales tax expires upon the date of withdrawal of that county from the district or if and when the compact becomes null and void. K.S.A. 1995 Supp. 12-2539(c). However, according to the proposed ballot language, the retail sales tax will terminate upon the collection from the district of $118,000,000 so whichever event occurs first will terminate the county-wide retailers' sales tax. In the absence of a specific constitutional objection to the sales tax which we can address, we find nothing which would cast doubt on its constitutionality.
 "8. Is the Act identical or otherwise legally consistent with the Missouri counterpart so as to avoid any conflicts between this legislation between these two states."
The Missouri counterpart to K.S.A. 1995 Supp. 12-2536 et seq. is identical. RsMo §§ 70.500 et seq.
 "10. Is the imposition of a Kansas sales tax, and the usage thereof by the Commission, controlled in part by residents of the State of Missouri, an appropriate usage of Kansas sales tax revenues in the State of Missouri." Section 21 of article 2 of the Kansas constitution provides that the legislature may confer powers of local legislation and administration upon political subdivisions. The district is a political subdivision of the states of Kansas and Missouri and the commission is its governing body. K.S.A. 1995 Supp. 12-2536, Articles III(a), V(a). (Also, see article 2, section 30 of the Kansas constitution which authorizes the legislature to confer legislative powers upon interstate bodies such as the district.) Consequently, the public funds that are appropriated to the commission may be used to fund cultural activities and organizations within the district regardless whether the activity occurs in a Missouri county or a Kansas county that is part of the district.
 "13. I understand from the election authorities of Johnson County, Kansas that the proposed resolution is drafted to read as an endorsement of the measure by the Johnson County Board of County Commissioners. Please use all resources available to you to review this issue and please opine as to the legalities of such procedures."
The compact requires that a county desirous of creating or becoming a part of the district adopt a resolution upon finding that "the creation of or participation in the district is in the best interests of the citizens of the county and that the levy of a tax to provide . . . financial support of the district would be economically practicable and cost beneficial to the citizens of the county." K.S.A. 1995 Supp. 12-2536, Article IV(b)(1). Moreover, the resolution must be printed in the election notice and on the ballot. Article IV(c)(1). It is our opinion that the Johnson county resolution that you submitted to this office meets the requirements of the compact and must be placed in the election notice and on the ballot.
 "14. In the event the Act conflicts with the provisions of the Kansas Constitution, are the applicable Kansas Constitutional provisions superseded by the Kansas and Missouri Metropolitan Culture District Compact (S. Res. 2403, 103rd Cong. 2nd sess. (enacted)."
The answer to your query depends upon the nature of the conflict. In the absence of additional information, we are unable to respond.
 "15. Should the State of Kansas terminate pursuant to K.S.A. sec. 12-2536, Article IX, under a situation wherein no bonded indebtedness has been incurred within the first five years (K.S.A., art. VI sec. (f)), but a contractual liability has been incurred (such as a lease, draw certificates or other similar debt instrument issued to retire borrowing incurred to fund construction or reconstruction), will Kansas be allowed to so terminate without the payment or retirement of any such contractual liabilities."
Article IX of the compact states, as follows:
 "The compact shall continue in force and remain binding upon a party state until its legislature shall have enacted a statute repealing the same and providing for the sending of formal written notice of enactment of such statute to the legislature of the other party state. Upon enactment of such a statute by the legislature of either party state, the sending of notice thereof to the other party state, and payment of any obligations which the metropolitan culture district commission may have incurred prior to the effective date of such statute, including, but not limited to, the retirement of any outstanding bonded indebtedness of the district, the agreement of the party states embodied in the compact shall be deemed fully executed, the compact shall be null and void and of no further force or effect, the metropolitan culture district shall be dissolved, and the metropolitan culture district commission shall be abolished." (Emphasis added.)
This section is clear that all obligations including any contractual obligations incurred by the commission prior to the effective date of the repealing statute must be paid before the compact is null and void.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm